**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

LAURA KAISER, Individually and as Personal
Representative of the Estate of LAWRENCE
EDWIN KAISER, deceased, and his minor
children.

        Plaintiff,

vs.                              CIV. NO**.** 09-126 RB/LFG

Bidal Candelaria, Detention Administrator-
Rio Arriba County Jail, Larry DeYapp-Case Manager,
Rio Arriba Board of County Commissioners,
        Defendants.

## FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, WRONGFUL DEATH, TORT CLAIMS, AND DAMAGES

Plaintiff Laura Kaiser, individually, as personal representative of the Estate of Lawrence

E. Kaiser and on behalf of his minor children, brings this complaint for violation of civil rights

under 42 U.S.C. §§ 1983 and 1988, the New Mexico Wrongful Death Act § 42-2-1, and loss of

consortium, and negligence, gross negligence, recklessness under the New Mexico state law and

under the New Mexico Tort Claims Act § 41-4-1 et seq., and alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 1983 and

1988, and 28 U.S.C. § 1331, with pendent jurisdiction over the state law claims.

Venue is proper in this district as Defendants are all residents of New Mexico and

all of the acts complained of occurred in New Mexico.  Plaintiff's cause of action

arose in New Mexico.

## PARTIES

2.     Laura Kaiser the Plaintiff is bring this lawsuit in her capacity as; an individual, also in the capacity as the duly appointed Personal Representative of the Estate of Decedent, her late husband, Lawrence E. Kaiser, and in the capacity as the guardian and duly appointed representative of  Kaiser's two minor children, Jonas and Anthony. Laura and Lawrence Kaiser were residents and citizen of the state of New Mexico before Mr. Kaiser's death.

3.     Defendant Bidal Candelaria, was at all relevant times herein, the Administrator of the Rio Arriba County Detention Center ( Hereafter: RACDC), New Mexico and responsible for the reasonable supervision, operations, and management of the RACDC and the decedent's welfare, medical and mental health care while incarcerated, and on the date of the Plaintiff's death, February 4, 2007.

4.     Defendant Larry DeYapp was at all relevant times herein, the caseworker of RACDC, New Mexico and responsible for the reasonable supervision, operations, and management of the decedent's welfare, medical and mental health care and well being while incarcerated as an inmate at RACDC.

5.     Defendant Larry DeYapp is the current Detention Administrator of the RACDC.

6.     Defendant, Rio Arriba Board of County Commissioners, were at all time responsible for the management and operation of the Rio Arriba County Detention Facility.

7.     At all times material to this Complaint, the Defendants acted within the scope of their duties and employment, under color of state law and Defendants are sued in both their individual and official capacities.

2

## FACTUAL BACKGROUND

8.  The Decedent 38 years old at the time of his death, had been married to his wife

    Laura Kaiser, and was living with their minor child Anthony (a second child

    Jonas was born to the couple on June 26, 2007, after Mr. Kaiser's death)  in

    Northern New Mexico prior to his incarceration and death. He was employed as a

    manager of a Raley's grocery store and had no criminal history prior to his

    incarceration at RACDC.

9.  Around the fall of 2006, Lawrence E. Kaiser had begun to manifest symptoms of

    mental illness and sought diagnosis at a local community clinic.

10. On or about December 13, 2006, Decedent took his one year old son "Anthony",

    from his home in the family car. He told his wife he was taking the child to

    Kansas to have him baptized. Laura Kaiser called the local police and a "be on the

    lookout"(BOLO) was issued to police agencies.

11. The decedent was located panhandling with his son Anthony at a Taco-Bell

    parking lot shortly after taking the child.  Decedent was approached by Espanola

    Police, and acted irrational, combative, and resisting.  Decedent was ultimately

    struck with a police "tazer" by the arresting officer. Decedent was arrested by the

    Espanola Police Department. Decedent was charged with child abuse, resisting

    arrest, and battery upon a law enforcement officer.

12. After initially being detained in a holding cell at Espanola Police Department,

    Decedent was transported to the custody of the Rio Arriba County Detention

    Facility.

13.  On December 15, 2006 and several times thereafter, Laura Kaiser and others contacted personnel and supervisor at the RACDF, including but not limited to RACDC staff member Ms. Lydia Garcia, and advised them of the Decedent's prior mental health episodes, history and condition. Kaiser asked that Decedent be promptly seen by psychiatric personnel.

14.  Upon information and belief, at some point between December 16-24, 2007 and thereafter, Dr. Barendsen a University of New Mexico Hospital psychiatrist or his staff members, assistants, or associates provided mental health services to the RACDC and decedent.

15.  Barendsen and others associated with him instructed the RACDF staff that Decedent suffered from acute mental illness and dangerous medical conditions. They recommended Kaiser be moved to a clinical hospital or mental health facility and further advised Defendants that Kaiser's medical or mental health conditions could not be managed or adequately cared for at the RACDC jail on an outpatient basis.

16.  Upon information and belief, at some point during Kaiser's incarceration, RADC staff contacted individuals associated with the Las Vegas Institute for Behavior Health to discuss the possibility of transferring Kaiser to their facility.

17.  In the month of January 2007 through February 4, 2007, Decedents mental and physical health began to deteriorate rapidly significantly. Decedent had gotten into altercations with guards, was constantly sleeping, had irregular eating and poor hygiene habits, refused to see social workers, psychologist and psychiatrist.

4

18.     Towards the end of January 2007, Defendants were aware that inmate Kaiser was dehydrated, had lost lots of weight, had sunken in cheeks, was pale, had not eaten on many days, was sleeping almost all day, had not come out of his cell, was immobile and not moving very much, was unresponsive to verbal communication, and needed medical attention.

19.     Defendants failed to provide any medical attention to Defendant for many days prior to his death, irrespective of the obvious medical distress of inmate Kaiser.

20.     RACDC staff and management knew or should have known that throughout Mr. Kaiser's incarceration he suffered from severe mental health and medical problems that required prompt and immediate medical and mental health attention and treatment.

21.     On February 4, 2007 at approximately 11:00 am, Decedent was found in his cell unresponsive to correctional staff and emergency medical technicians pronounced dead.

22.     Defendants fraudulently concealed the cause of Kaiser's death.

23.     On February 22, 2007 the New Mexico Office of the Medical Investigator completed its report and concluded the Lawrence Kaiser has died from a bilateral pulmonary thrombemboli (Blood clots that block oxygenated blood from the heart, lungs, brain).

24.     Upon information and belief, this condition "thrombemboli" (Blood clots that block oxygenated blood from the heart, lungs, brain) is common in individuals that experience a lack of physical activity, immobility, dehydration and lack of movement.

5

25.     Lawrence Kaiser's death was caused by the failure of Defendants to provide medical and or mental health care that was obvious and necessary to non-medically trained lay people in the days preceding his death.

26.     Defendants had a custom, policy, or practice and acted with deliberate indifference to the serious medical needs of prisoners including Lawrence Kaiser,, including but not limited to deliberate indifference with regard to the providing prescription medications without qualified and timely medical staff monitoring, failure to provide medical and mental health care to inter alia, the decedent, failure to institute and apply institutional policies regarding the dispensing and ingestion of medications by inmates, and failing to provide inmates in medical distress emergency medical care.

27.     Defendants failed to adequately train correctional staff in the area of special needs offender supervision including medical needs of inmates and mental health needs of inmates.

28.     As a result of Defendants' unlawful actions as set forth above, Laurence Kaiser suffered wrongful death, physical pain and suffering, emotional and psychological distress, fear, and anxiety and other financial damages.

29.     As a result of Lawrence Kaiser's death, the Plaintiffs both individually and in their representative capacities have suffered damages.

## COUNT I: SECTION 1983 CLAIMS UNDER EIGHTH AND FOURTEENTH AMENDMENTS, AGAINST THE INDIVIDUAL DEFENDANTS

30.     Plaintiff incorporates paragraphs 1 through 29, as though fully set forth herein.

31.     The Eighth Amendment through the Fourteenth Amendment prohibits cruel and unusual punishments against pre-trial prisoners incarcerated in government detention centers.  This restriction encompasses a constitutional duty to provide necessary medical and mental health care to prisoners.

32.     Defendants Candelaria, DeYapp and Board of County Commissioners,  acts set forth above violated Decedent's rights under the Fourteenth and Eighth Amendment to the United States Constitution, to be secure in his bodily integrity, receive adequate health and mental health care, and is cruel and unusual punishment as  conditions of confinement.

33.     The actions and inactions of Defendants Candelaria, DeYapp, and Board of County Commissioners, were intentional, malicious, willful, wanton, obdurate, and in gross and reckless disregard of inmate Kaiser constitutional rights demonstrating a deliberate indifference to the Decedent's constitutional rights.

34.     Further, Decedent's medical and mental health needs in the months preceding his death were of the most serious and obvious kind objectively and subjectively known to the Defendants.

35.     Defendants demonstrated deliberate indifferent by consciously ignoring Decedent's obvious and serious medical and mental health needs. Defendants continued to provide decedent with a dangerous prescription medication despite the known risk that their failure to adequately provide health and mental health care to clinically monitor Decedent's use of the medication  and related physical medical condition, posed a serious risk of harm to Decedent's health, safety, and welfare.

7

36.     Further, Defendants Candelaria, Deyapp, and Board of County Commissioners,

knowingly placed Decedent in a dangerous situation, and acted with deliberate

indifference to his constitutional right to receive obviously necessary medical

treatment while incarcerated, by deliberately and consciously refusing to provide

necessary medical care on observing the clear signs of medical distress during the

events leading up to Decedent's death.

37.     The individual Defendants' acts proximately caused Decedent damages and

injuries.  These damages include pain and suffering, severe psychological and

emotional distress, and loss of life.

### COUNT II: CLAIM FOR WRONGFUL DEATH BY LAURA KAISER IN HER INDIVIDUAL CAPACITY AND IN HER REPRESENTATIVE CAPACITY OF THE ESTATE AND  MINOR CHILDREN OF LAWRENCE KAISER, AGAINST CANDELARIA, DEYAPPS,BOARD OF COUNTY DEFENDANTS

38.     Plaintiff incorporates paragraphs 1 through 37 as though fully set forth herein.

Defendants Candelaria, Deyapp, and Board of County Commissioners, had a duty

to exercise reasonable care in providing medical and mental health care,

treatment, and services to prisoners at RACDC.

39.     Defendants Candelaria, Deyapp, and Board of County Commissioners, breached

their duty with regard to Decedent, Lawrence Kaiser as described above.

40.     The acts and omissions of Defendants Candelaria, Deyapp, and Board of County

Commissioners were negligent, grossly negligent, and in reckless disregard of

Decedent's rights.

41.     The acts and omissions of Defendants Candelaria, Deyapp, and Board of County

Commissioners, as set forth above proximately caused Decedent damages and

injuries, including pain and suffering, severe psychological and emotional distress, and loss of life.

42. Defendant, Candelaria, Deyapp, and Board of County Commissioners, are liable for its employees' torts as set forth above, which were committed in the scope of their employment and duties.

## COUNT III: CLAIM FOR NEGLIGENT, GROSSLY NEGLIGENT, AND RECKLESS OPERATION OF A PUBLIC FACILITY RESULTING IN DEATH AGAINST DEFENDANTS CANDELARIA, DEYAPP, BOARD OF COUNTY COMMISSIONERS

43. Plaintiff incorporates paragraphs 1 though 42 as though fully set forth herein.

44. Defendants Candelaria, Deyapp and Board of County Commissioners had a duty to exercise reasonable care for prisoners' safety in the operation of Rio Arriba County Detention Facility.

45. These Defendants failed to exercise such care, by failing to ensure that Decedent received adequate treatment for his obvious and serious medical needs, to take any steps to eliminate or reduce the gross and reckless medical malpractice in which Jail medical staff engaged, or to make other, adequate medical care available to prisoners at Rio Arriba County Detention Facility.

46. These Defendants' actions were in complete derogation of any known standard for the proper administration of a detention correctional facility, and constituted negligent, grossly negligent, and reckless operation of a public facility, *i.e.*, Rio Arriba County Detention Facility, for which immunity from liability is waived pursuant to NMSA 1978, § 41-4-6.

47.     Defendants' negligence, gross negligence, and recklessness as set forth above

proximately caused Decedent damages and injuries as set forth above, including

pain and suffering, severe psychological and emotional distress, and loss of life.

**COUNT IV: CLAIM FOR WRONGFUL DEATH-LOSS OF CONSORTIUM BY
LAURA KAISER IN HER INDIVIDUAL CAPACITY AGAINST CANDELARIA,
DEYAPP, BOARD OF COUNTY DEFENDANTS**

48.     Plaintiff incorporates paragraphs 1 though 47 as though fully set forth herein.

49.     As a result of Defendants action as set forth above and herein incorporated by

reference, Laura Kaiser, in her individual capacity, suffered emotional distress

due to the loss of society, guidance, companionship, intimate personal relations,

resulting from the death of her late husband, Lawrence Kaiser.

WHEREFORE, Plaintiff seeks damages, consistent with the law, compensatory

and punitive damages(where appropriate by law) on all claims against all appropriate

Defendants, together with an award of attorneys fees and costs.

**JURY DEMAND**

Plaintiff hereby demands a jury trial on all counts so triable.

Respectfully Submitted,

Electronically Filed

/s/ Robert J. Perry, Esq
Robert J. Perry
Attorney for Plaintiff, Laura Kaiser as personal
representative for the Estate and Children of
Lawrence Kaiser
201 12th Street N.W.
Albuquerque, NM 87102
505-244-0094   FAX: 505-244-0095

## <u>CERTIFICATE OF SERVICE</u>

Galen Reimer, Esq.
Christopher J. Supik, Esq.
Guebert Bruckner, PC
greimer@guebertlaw.com
csupik@guebertlaw.com
Attorneys for Rio Arriba County Defendants